**ANDERSON KILL P.C.**
Robert D. Chesler, Esq.
Steven J. Pudell, Esq.
One Gateway Center, Suite 1510
Newark, New Jersey 07102
973-642-5858
*Attorneys for Plaintiff,*
*ResinTech, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RESINTECH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AIG SPECIALTY INSURANCE COMPANY and ODELL STUDNER GROUP,<br><br>Defendants. | Civil Action No. 1:21-cv-19843<br><br>**FOURTH AMENDED COMPLAINT AND JURY DEMAND** |

## FOURTH AMENDED COMPLAINT

Plaintiff, ResinTech, Inc. ("Plaintiff" or "ResinTech"), by and through its undersigned attorneys, alleges as follows for its Fourth Amended Complaint against Defendants AIG Specialty Insurance Company ("AIG") and Odell Studner Group ("Odell") (collectively, the "Defendants"):

## NATURE OF THE ACTION

1. ResinTech seeks coverage under insurance Defendant AIG sold for losses ResinTech incurred in connection with notices of asserted violations issued by the Camden County Municipal Utilities Authority ("CCMUA") and the New Jersey Department of Environmental Protection ("NJDEP") for damages allegedly caused by discharges from ResinTech's facility located at 160 Cooper Road in Berlin, New Jersey (the "Claims").

2. ResinTech also seeks a declaration regarding the rights, duties, and obligations of AIG under the insurance with regard to the Claims.

3. ResinTech further seeks damages against Defendant Odell due to its breaches of contract and fiduciary obligations, and its negligence in connection with brokerage services provided, or which were to be provided, to ResinTech in purchasing insurance from AIG.

4. Alternatively, ResinTech seeks reformation of the primary insurance policy AIG sold to ResinTech to reflect the intent of the parties thereto to provide coverage for losses or damages caused by gradual pollution at ResinTech's 160 Cooper Road facility in Berlin, New Jersey.

**JURISDICTION & VENUE**

5. This Court's jurisdiction is based on 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is properly in this district pursuant to 28 U.S.C. § 1391 because, as detailed below, a substantial number of the events or omissions giving rise to ResinTech's claims occurred here.

7. Plaintiff ResinTech is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1801 Federal Street, Camden, New Jersey. ResinTech does business in New Jersey, and the Claims relate to alleged violations of discharges from ResinTech's facility located in Berlin, Camden County, New Jersey.

8. Upon information and belief, Defendant AIG is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 175 Water Street, New York, New York. AIG is licensed to do business and is doing business around the

country, including in New Jersey. It is licensed or authorized by various states, including New Jersey, to issue insurance policies and it issues policies in this state.

9. AIG is subject to jurisdiction in New Jersey by having acted for the purpose of realizing pecuniary benefit in this State, and by contracting to insure persons, property and/or risks located within New Jersey.

10. Upon information and belief, Defendant Odell is a limited liability company organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 200 North Warner Road, King of Prussia, Pennsylvania.

11. Upon information and belief, Odell's members include:

- Geofrey A. Goldwater, an individual, who resides at 700 Pine Hill Road in Wayne, Pennsylvania;
- Joseph B. Studner, an individual, who resides at 3 Radnor Corporate Center, Suite 100 in Wayne, Pennsylvania;
- Steven A. Odell, an individual, who resides at 1036 N. Spring Mill Road in Villanova, Pennsylvania; and
- Robert D. Odell, an individual, who resides at 190 Presidential Boulevard, Unit 507 in Bala Cynwyd, Pennsylvania.

12. Upon information and belief, Odell is owned by Acrisure, LLC, a Michigan limited liability company, whose members include:

- Adam Furrow, an individual, who resides at 5664 Prairie Creek Drive SE, Caledonia, Michigan;
- Kelly Clough, an individual, who resides in Hudsonville, Michigan;
- Shawn McCracken, an individual, who resides in Chicago, Illinois;
- Ricky Norris, an individual, who resides in Naples, Florida;
- Anthony Curti, an individual, who resides in Bloomfield Hills, Michigan; and
- Courtney L. Kolenda, an individual, who resides in Grand Rapids, Michigan.

13. Odell is subject to jurisdiction in New Jersey by having acted for the purpose of realizing pecuniary benefit in this State, and by offering and providing brokerage services to and for persons, property, and risks located in New Jersey.

14. Jurisdiction and venue also are proper in that the involved losses were suffered in New Jersey, and the Defendants' failures, breaches, and misconduct also occurred in Camden County, New Jersey.

## FACTUAL BACKGROUND

15. ResinTech entered into a contract with Odell and appointed Odell its insurance broker with respect to negotiation and placement of insurance on ResinTech's behalf for several insurance programs, including ResinTech's environmental and general liability exposure insurance (the "Broker Agreement").

16. Odell, however, was not just an ordinary insurance broker. Indeed, in its online marketing materials, Odell boasts how it provides a panoply of brokerage and risk management services – including risk management assessment, risk management programs, coverage gaps analysis, and insurance policy advisement.

17. Specifically, Odell promises to "work with your organization to understand your greatest potential for exposure and minimize risk." Odell also promises to help "identify[] the correct insurance coverage."

18. Since 2016, ResinTech relied upon Odell to provide comprehensive risk management and brokerage services.

19. Given Odell's long-standing relationship with ResinTech, Odell was well aware of ResinTech's business activities, including that ResinTech used hazardous substances at its premises, including at, among other locations, ResinTech's Berlin, New Jersey facility.

20. Odell ultimately placed ResinTech's environmental and general liability exposure program with AIG, securing for ResinTech a Commercial General Liability and Pollution Legal Liability Policy, Policy No. EG15423107, for the period from January 1, 2020, to January 1, 2021 (the "Primary Policy").

21. The Primary Policy was extended until April 1, 2021.

22. ResinTech also purchased from AIG a Commercial Excess Follow Form Policy, Policy No. EGU15424611, for the period from January 1, 2020 to January 1, 2021. (the "Excess Policy") (the Excess Policy, together with the Primary Policy, the "Policies"). The Excess Policy was extended until April 1, 2021.

23. The Excess Policy states (among other things) that it follows form to the Primary Policy, specifically that "[t]he insurance afforded under this [Excess] Policy is subject to the insuring agreements, exclusions, definitions and conditions contained in the [Primary Policy.]"

24. The Policies should provide ResinTech with coverage for, among other things, losses or damages caused by gradual pollution and pollution commencing during the policy period.

25. The Policies provide coverage for, among other locations, losses and damages arising from ResinTech's facility located at 160 Cooper Road in Berlin, New Jersey.

26. Broadly speaking, the Policies afford two types of Pollution Legal Liability Coverage: (1) gradual pollution coverage pursuant to Section D-1; and (2) sudden and accidental pollution coverage pursuant to Section D-2.

27. ResinTech and AIG intended for the Policies to provide Section D-1 coverage.

28. The declarations page of the Primary Policy, the coverage proposal provided by AIG on November 14, 2019, and the binder provided by AIG on December 26, 2019, all show "PURCHASED" and a $25,000 deductible for "Coverage D-1."

29. The "Schedule of Underlying Insurance" attached to the Excess Policy references the Primary Policy and provides "$1,000,000 Each Loss Limit (Coverage D – Pollution Legal Liability)[.]"

30. Upon information and belief, at all relevant times, ResinTech and AIG expected Section D-1 coverage under the Policies for losses or damages caused by gradual pollution at ResinTech's 160 Cooper Road facility in Berlin, New Jersey.

31. On or about October 28, 2020, the CCMUA issued a notice of violation letter regarding allegations that ResinTech's facility in Berlin, New Jersey, had been discharging non-compliant wastewater into the sewer system, which allegedly caused damage to CCMUA's Berlin Township Pump Station as well as numerous breaks in the Berlin force main. In its letter, the CCMUA further accused ResinTech of allegedly violating the New Jersey Pollutant Discharge Elimination System ("NJPDES") Rules and the New Jersey Water Pollution Control Act ("NJWPCA").

32. On or about February 4, 2021, the NJDEP issued a notice of violation letter to ResinTech with regard to ResinTech's alleged violations of the New Jersey Solid Waste Management Act ("NJSWMA"), and its related regulations promulgated.

33. On or about April 27, 2021, the CCMUA issued a notice of civil administrative penalty assessment letter to ResinTech under the NJWPCA, assessing a civil administrative penalty of $1,400,000.

34. On or about June 28, 2021, the NJDEP issued a notice of civil administrative penalty letter to ResinTech under the NJSWMA, assessing a civil administrative penalty of $75,000.

35. ResinTech provided AIG with prompt and timely notice of the Claims.

36. AIG, by letter dated July 15, 2021, denied coverage for the Claims under Section D-2 of the Primary Policy and stated Section D-1 was "inapplicable."

37. ResinTech, by letter dated September 21, 2021, demanded AIG defend and otherwise meet its contractual obligations, including its indemnity obligation, to ResinTech in connection with the Claims.

38. AIG, by letter dated November 5, 2021, denied coverage for the Claims under Section D-1 of the Primary Policy, stating (among other things) that Section D-1 "is not available to ResinTech for this matter." Specifically, AIG claims that the Primary Policy does not include a Schedule of Insured Property(ies) Endorsement applicable for Section D-1 and, therefore, the 160 Cooper Road, West Berlin, New Jersey property does not qualify as an "insured property" for purposes of Section D-1.

39. After AIG failed and refused coverage to ResinTech, on or about February 22, 2022, ResinTech entered into a settlement agreement with the NJDEP, which resolved all claims between ResinTech and the NJDEP arising from the Claims.

40. Similarly, on April 9, 2024, ResinTech and the CCMUA reached a settlement in principal, which resolved all claims between ResinTech and the CCMUA arising from the Claims.

41. ResinTech's settlements with the CCMUA and NJDEP exceeded the Primary Policy's $1 million limit of liability.

42. ResinTech has complied in all material respects with the terms and conditions of the Policies.

43. ResinTech's losses incurred in connection with the Claims fall within the coverage provided by the Policies, including the gradual pollution coverage provided by Section D-1.

44. AIG has failed and refused fully to reimburse ResinTech for its losses resulting from the Claims.

45. Odell placed ResinTech's environmental and general liability insurance program with AIG, securing for ResinTech the Policies under which AIG now seeks to limit and avoid coverage to ResinTech on bases inconsistent with Odell's obligations and advice to ResinTech, and ResinTech's reasonable expectations and understanding of the coverage provided under the Policies.

46. The Policies should insure ResinTech's losses incurred in connection with the Claims under the gradual pollution coverage provided by Section D-1 of the Primary Policy.

47. AIG, however, alleges Section D-1 of the Primary Policy is "inapplicable."

48. Odell was well aware of ResinTech's business activities, including that ResinTech used hazardous substances at its premises, including at, among other locations, ResinTech's Berlin, New Jersey facility.

49. Odell committed to ResinTech, under the Broker Agreement and otherwise, to provide full and appropriate coverage for ResinTech's environmental risks.

50. To the extent the Policies do not provide coverage for the Claims under Section D-1, it is because Odell failed to secure Section D-1 coverage for ResinTech.

51. As a direct and proximate result of the foregoing, ResinTech has incurred substantial actual damages and such damages are continuing.

**COUNT I (BREACH OF CONTRACT - AIG)**

52. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53. Defendant AIG has refused, rejected, or failed to honor its obligations to provide coverage for ResinTech's covered losses under the Policies.

54. By reason of the foregoing, AIG has breached its obligations under the Policies, and is liable to ResinTech for money damages for breach of contact.

55. As a result of the aforesaid breaches of contract, ResinTech has suffered damages.

**WHEREFORE,** ResinTech demands judgment against Defendant AIG as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT II (DECLARATORY JUDGMENT - AIG)**

56. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57. AIG has failed and refused to meet its obligations in connection with the losses sustained by ResinTech resulting from the Claims.

58. ResinTech seeks a judicial determination of ResinTech's rights and AIG's obligations with regard to an actual controversy arising out of the Policies.

59. An actual, present and justiciable controversy exists between ResinTech and AIG with respect to AIG's respective duties and obligations to ResinTech under the Policies.

60. The issuance of relief by this Court will resolve the existing controversy between ResinTech and AIG.

**WHEREFORE,** ResinTech demands judgment against Defendant AIG as follows:

(a) Declaring and adjudging that ResinTech is entitled to insurance coverage under the Policies for, among other things, the losses sustained by ResinTech as a result of the Claims.

(b) In addition to such declaratory relief, ResinTech should recover such monetary relief as necessary given the Court's declaration of ResinTech's rights and AIG's obligations.

**COUNT III (BREACH OF CONTRACT - ODELL)**

61. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 60 as if fully set forth herein.

62. Under the Broker Agreement, Odell agreed to provide brokerage services to ResinTech.

63. Odell failed to perform all of its duties consistent with the terms and conditions of the Agreement.

64. By reason of the foregoing, Odell has breached the Broker Agreement with ResinTech by failing, among other things, to secure appropriate insurance coverage for ResinTech, including Section D-1 coverage under the Policies, and to properly advise ResinTech with regard to insurance coverage matters.

65. By reason of the foregoing, Odell has breached is obligations under the Broker Agreement, and is liable to ResinTech for money damages for breach of contract.

66. As a result of the aforesaid breaches of contract, ResinTech has suffered damages.

**WHEREAS,** ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT IV (NEGLIGENCE - ODELL)**

67. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 66 as if fully set forth herein.

68. At all relevant times, Odell owed ResinTech a duty to exercise reasonable skill, care, and diligence when, among other things, (i) advising ResinTech in the purchase of its insurance policies; (2) procuring insurance policies on ResinTech's behalf; and (iii) examining the proposed terms and conditions of the insurance policies it obtained on ResinTech's behalf.

69. Odell breached its duties to ResinTech and failed to exercise reasonable skill, care, and diligence in connection with the brokerage services provided to ResinTech by, among other things, failing to secure Section D-1 coverage under the Policies.

70. By reason of the foregoing, Odell has breached its obligations and is liable to ResinTech for money damages for its negligence.

71. As a result of the foregoing, ResinTech has suffered damages.

**WHEREFORE,** ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT V (BREACH OF FIDUCIARY DUTIES - ODELL)**

72. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 71 as if fully set forth herein.

73. Odell undertook special obligations of a fiduciary nature to ResinTech.

74. Odell breached its fiduciary obligations to ResinTech by failing to secure appropriate insurance coverage for ResinTech (including by failing to secure Section D-1 coverage under the Policies) and to properly advise ResinTech with respect to insurance coverage matters.

75. Odell is liable to ResinTech for this and for the costs ResinTech has incurred and will incur in this litigation.

**WHEREAS,** ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Count may deem just and appropriate.

**COUNT VI (PROFESSIONAL MALPRACTICE - ODELL)**

76. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 75 as if fully set forth herein.

77. Odell owed a duty to act with, at least, the degree of skill, care, and diligence generally expected of reasonably skilled members of the profession.

78. ResinTech reasonably relied upon Odell to act in a manner consistent with its obligations.

79. Odell departed from the standard of care expected of it by, among other things, failing to secure Section D-1 coverage under the Policies.

80. By reason of the foregoing, Odell has breached its obligations, and is liable to ResinTech for money damages.

81. As a result of the foregoing, ResinTech has suffered damages.

**WHEREFORE**, ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT VII (REFORMATION OF CONTRACT IN THE ALTERNATIVE - AIG)**

82. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 81 as if fully set forth herein.

83. ResinTech sought adequate insurance coverage, including Section D-1 coverage for losses ResinTech incurs in connection with the West Berlin, New Jersey property.

84. Despite the agreement and understanding between ResinTech and AIG that the West Berlin, New Jersey property was to be insured under Section D-1, the Primary Policy AIG issued does not include a Schedule of Insured Property(ies) Endorsement applicable for Section D-1.

85. This error does not reflect the agreement reached by ResinTech and AIG regarding the Primary Policy.

86. At all times, it was the intent of the parties, including AIG, to insure ResinTech for losses incurred in connection with the West Berlin, New Jersey property under the Primary Policy's Section D-1 coverage.

87. As a result of the parties' inadvertent mutual mistake, the Primary Policy, as written, does not reflect the parties' true mutual intent and agreement and ResinTech, therefore, seeks reformation of the Primary Policy to include a Schedule of Insured Property(ies) Endorsement applicable for Section D-1, which lists ResinTech's facility located at 160 Cooper Road in West Berlin, New Jersey.

88. AIG will not be prejudiced by reformation of the Primary Policy as it relates to the Schedule of Insured Property(ies) Endorsement or otherwise.

**WHEREFORE**, ResinTech demands judgment against Defendant AIG as follows:

(a) For reformation of the Primary Policy so that it includes a Schedule of Insured Property(ies) Endorsement, which lists ResinTech's facility located at 160 Cooper Road in West Berlin, New Jersey.

**<u>COUNT VIII (BREACH OF THE REFORMED CONTRACT IN THE ALTERNATIVE-AIG)</u>**

89. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 88 as if fully set forth herein.

90. The Primary Policy, as reformed to reflect the parties' intent, is a valid and enforceable contract between ResinTech and AIG.

91. The Primary Policy includes a Schedule of Insured Property(ies) Endorsement applicable for Section D-1, which lists ResinTech's facility located at 160 Cooper Road in West Berlin, New Jersey .

92. The Primary Policy insures ResinTech's losses incurred in connection with the Claims under the gradual pollution coverage provided by Section D-1 of the Policy

93. The Excess Policy follows form to the reformed Primary Policy and, as a result, insures ResinTech's losses incurred in connection with the Claims under the gradual pollution coverage provided by Section D-1 of the reformed Primary Policy to the extent those losses exceed the reformed Primary Policy's $1 million limit of liability.

94. Defendant AIG has refused, rejected, or failed to honor its obligations to provide coverage for ResinTech's covered losses under the Policies, as reformed.

95. By reason of the foregoing, AIG has breached its obligations under the Policies, as reformed, and is liable to ResinTech for money damages.

96. As a result of the aforesaid breaches of the reformed contract, ResinTech has suffered damages.

**WHEREFORE**, ResinTech demands judgment against Defendant AIG as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all counts so triable.

**DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Steven J. Pudell as trial counsel.

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I HEREBY CERTIFY that the matter in controversy is not the subject of any other action pending in any court or any arbitration, and that no such other action is contemplated. I am not aware of any other parties that need to be joined at this time.

Dated: October 16, 2024

By: /s/ *Robert D. Chesler*

Robert D. Chesler, Esq.
Steven J. Pudell, Esq.
**ANDERSON KILL, P.C.**
One Gateway Center, Suite 1510
Newark, NJ 07102
*Attorneys for Plaintiff*
*ResinTech, Inc.*

# EXHIBIT A

**(Copy of Fourth Amended Complaint with yellow highlights reflecting changes to comply with Judge's Order, dated October 8, 2024)**

**ANDERSON KILL P.C.**
Robert D. Chesler, Esq.
Steven J. Pudell, Esq.
One Gateway Center, Suite 1510
Newark, New Jersey 07102
973-642-5858
*Attorneys for Plaintiff,*
*ResinTech, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RESINTECH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AIG SPECIALTY INSURANCE COMPANY and ODELL STUDNER GROUP,<br><br>Defendants. | Civil Action No. 1:21-cv-19843<br><br>**FOURTH AMENDED COMPLAINT AND JURY DEMAND** |

**<u>FOURTH AMENDED COMPLAINT</u>**

Plaintiff, ResinTech, Inc. ("Plaintiff" or "ResinTech"), by and through its undersigned attorneys, alleges as follows for its Fourth Amended Complaint against Defendants AIG Specialty Insurance Company ("AIG") and Odell Studner Group ("Odell") (collectively, the "Defendants"):

**<u>NATURE OF THE ACTION</u>**

1. ResinTech seeks coverage under insurance Defendant AIG sold for losses ResinTech incurred in connection with notices of asserted violations issued by the Camden County Municipal Utilities Authority ("CCMUA") and the New Jersey Department of Environmental Protection ("NJDEP") for damages allegedly caused by discharges from ResinTech's facility located at 160 Cooper Road in Berlin, New Jersey (the "Claims").

2. ResinTech also seeks a declaration regarding the rights, duties, and obligations of AIG under the insurance with regard to the Claims.

3. ResinTech further seeks damages against Defendant Odell due to its breaches of contract and fiduciary obligations, and its negligence in connection with brokerage services provided, or which were to be provided, to ResinTech in purchasing insurance from AIG.

4. Alternatively, ResinTech seeks reformation of the primary insurance policy AIG sold to ResinTech to reflect the intent of the parties thereto to provide coverage for losses or damages caused by gradual pollution at ResinTech's 160 Cooper Road facility in Berlin, New Jersey.

## JURISDICTION & VENUE

5. This Court's jurisdiction is based on 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is properly in this district pursuant to 28 U.S.C. § 1391 because, as detailed below, a substantial number of the events or omissions giving rise to ResinTech's claims occurred here.

7. Plaintiff ResinTech is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1801 Federal Street, Camden, New Jersey. ResinTech does business in New Jersey, and the Claims relate to alleged violations of discharges from ResinTech's facility located in Berlin, Camden County, New Jersey.

8. Upon information and belief, Defendant AIG is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 175 Water Street, New York, New York. AIG is licensed to do business and is doing business around the

country, including in New Jersey. It is licensed or authorized by various states, including New Jersey, to issue insurance policies and it issues policies in this state.

9. AIG is subject to jurisdiction in New Jersey by having acted for the purpose of realizing pecuniary benefit in this State, and by contracting to insure persons, property and/or risks located within New Jersey.

10. Upon information and belief, Defendant Odell is a limited liability company organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at 200 North Warner Road, King of Prussia, Pennsylvania.

11. Upon information and belief, Odell's members include:

- Geofrey A. Goldwater, an individual, who resides at 700 Pine Hill Road in Wayne, Pennsylvania;
- Joseph B. Studner, an individual, who resides at 3 Radnor Corporate Center, Suite 100 in Wayne, Pennsylvania;
- Steven A. Odell, an individual, who resides at 1036 N. Spring Mill Road in Villanova, Pennsylvania; and
- Robert D. Odell, an individual, who resides at 190 Presidential Boulevard, Unit 507 in Bala Cynwyd, Pennsylvania.

12. Upon information and belief, Odell is owned by Acrisure, LLC, a Michigan limited liability company, whose members include:

- Adam Furrow, an individual, who resides at 5664 Prairie Creek Drive SE, Caledonia, Michigan;
- Kelly Clough, an individual, who resides in Hudsonville, Michigan;
- Shawn McCracken, an individual, who resides in Chicago, Illinois;
- Ricky Norris, an individual, who resides in Naples, Florida;
- Anthony Curti, an individual, who resides in Bloomfield Hills, Michigan; and
- Courtney L. Kolenda, an individual, who resides in Grand Rapids, Michigan.

13. Odell is subject to jurisdiction in New Jersey by having acted for the purpose of realizing pecuniary benefit in this State, and by offering and providing brokerage services to and for persons, property, and risks located in New Jersey.

14. Jurisdiction and venue also are proper in that the involved losses were suffered in New Jersey, and the Defendants' failures, breaches, and misconduct also occurred in Camden County, New Jersey.

## FACTUAL BACKGROUND

15. ResinTech entered into a contract with Odell and appointed Odell its insurance broker with respect to negotiation and placement of insurance on ResinTech's behalf for several insurance programs, including ResinTech's environmental and general liability exposure insurance (the "Broker Agreement").

16. Odell, however, was not just an ordinary insurance broker. Indeed, in its online marketing materials, Odell boasts how it provides a panoply of brokerage and risk management services – including risk management assessment, risk management programs, coverage gaps analysis, and insurance policy advisement.

17. Specifically, Odell promises to "work with your organization to understand your greatest potential for exposure and minimize risk." Odell also promises to help "identify[] the correct insurance coverage."

18. Since 2016, ResinTech relied upon Odell to provide comprehensive risk management and brokerage services.

19. Given Odell's long-standing relationship with ResinTech, Odell was well aware of ResinTech's business activities, including that ResinTech used hazardous substances at its premises, including at, among other locations, ResinTech's Berlin, New Jersey facility.

20. Odell ultimately placed ResinTech's environmental and general liability exposure program with AIG, securing for ResinTech a Commercial General Liability and Pollution Legal Liability Policy, Policy No. EG15423107, for the period from January 1, 2020, to January 1, 2021 (the "Primary Policy").

21. The Primary Policy was extended until April 1, 2021.

22. ResinTech also purchased from AIG a Commercial Excess Follow Form Policy, Policy No. EGU15424611, for the period from January 1, 2020 to January 1, 2021. (the "Excess Policy") (the Excess Policy, together with the Primary Policy, the "Policies"). The Excess Policy was extended until April 1, 2021.

23. The Excess Policy states (among other things) that it follows form to the Primary Policy, specifically that "[t]he insurance afforded under this [Excess] Policy is subject to the insuring agreements, exclusions, definitions and conditions contained in the [Primary Policy.]"

24. The Policies should provide ResinTech with coverage for, among other things, losses or damages caused by gradual pollution and pollution commencing during the policy period.

25. The Policies provide coverage for, among other locations, losses and damages arising from ResinTech's facility located at 160 Cooper Road in Berlin, New Jersey.

26. Broadly speaking, the Policies afford two types of Pollution Legal Liability Coverage: (1) gradual pollution coverage pursuant to Section D-1; and (2) sudden and accidental pollution coverage pursuant to Section D-2.

27. ResinTech and AIG intended for the Policies to provide Section D-1 coverage.

28. The declarations page of the Primary Policy, the coverage proposal provided by AIG on November 14, 2019, and the binder provided by AIG on December 26, 2019, all show "PURCHASED" and a $25,000 deductible for "Coverage D-1."

29. The "Schedule of Underlying Insurance" attached to the Excess Policy references the Primary Policy and provides "$1,000,000 Each Loss Limit (Coverage D – Pollution Legal Liability)[.]"

30. Upon information and belief, at all relevant times, ResinTech and AIG expected Section D-1 coverage under the Policies for losses or damages caused by gradual pollution at ResinTech's 160 Cooper Road facility in Berlin, New Jersey.

31. On or about October 28, 2020, the CCMUA issued a notice of violation letter regarding allegations that ResinTech's facility in Berlin, New Jersey, had been discharging non-compliant wastewater into the sewer system, which allegedly caused damage to CCMUA's Berlin Township Pump Station as well as numerous breaks in the Berlin force main. In its letter, the CCMUA further accused ResinTech of allegedly violating the New Jersey Pollutant Discharge Elimination System ("NJPDES") Rules and the New Jersey Water Pollution Control Act ("NJWPCA").

32. On or about February 4, 2021, the NJDEP issued a notice of violation letter to ResinTech with regard to ResinTech's alleged violations of the New Jersey Solid Waste Management Act ("NJSWMA"), and its related regulations promulgated.

33. On or about April 27, 2021, the CCMUA issued a notice of civil administrative penalty assessment letter to ResinTech under the NJWPCA, assessing a civil administrative penalty of $1,400,000.

34. On or about June 28, 2021, the NJDEP issued a notice of civil administrative penalty letter to ResinTech under the NJSWMA, assessing a civil administrative penalty of $75,000.

35. ResinTech provided AIG with prompt and timely notice of the Claims.

36. AIG, by letter dated July 15, 2021, denied coverage for the Claims under Section D-2 of the Primary Policy and stated Section D-1 was "inapplicable."

37. ResinTech, by letter dated September 21, 2021, demanded AIG defend and otherwise meet its contractual obligations, including its indemnity obligation, to ResinTech in connection with the Claims.

38. AIG, by letter dated November 5, 2021, denied coverage for the Claims under Section D-1 of the Primary Policy, stating (among other things) that Section D-1 "is not available to ResinTech for this matter." Specifically, AIG claims that the Primary Policy does not include a Schedule of Insured Property(ies) Endorsement applicable for Section D-1 and, therefore, the 160 Cooper Road, West Berlin, New Jersey property does not qualify as an "insured property" for purposes of Section D-1.

39. After AIG failed and refused coverage to ResinTech, on or about February 22, 2022, ResinTech entered into a settlement agreement with the NJDEP, which resolved all claims between ResinTech and the NJDEP arising from the Claims.

40. Similarly, on April 9, 2024, ResinTech and the CCMUA reached a settlement in principal, which resolved all claims between ResinTech and the CCMUA arising from the Claims.

41. ResinTech's settlements with the CCMUA and NJDEP exceeded the Primary Policy's $1 million limit of liability.

42. ResinTech has complied in all material respects with the terms and conditions of the Policies.

43. ResinTech's losses incurred in connection with the Claims fall within the coverage provided by the Policies, including the gradual pollution coverage provided by Section D-1.

44. AIG has failed and refused fully to reimburse ResinTech for its losses resulting from the Claims.

45. Odell placed ResinTech's environmental and general liability insurance program with AIG, securing for ResinTech the Policies under which AIG now seeks to limit and avoid coverage to ResinTech on bases inconsistent with Odell's obligations and advice to ResinTech, and ResinTech's reasonable expectations and understanding of the coverage provided under the Policies.

46. The Policies should insure ResinTech's losses incurred in connection with the Claims under the gradual pollution coverage provided by Section D-1 of the Primary Policy.

47. AIG, however, alleges Section D-1 of the Primary Policy is "inapplicable."

48. Odell was well aware of ResinTech's business activities, including that ResinTech used hazardous substances at its premises, including at, among other locations, ResinTech's Berlin, New Jersey facility.

49. Odell committed to ResinTech, under the Broker Agreement and otherwise, to provide full and appropriate coverage for ResinTech's environmental risks.

50. To the extent the Policies do not provide coverage for the Claims under Section D-1, it is because Odell failed to secure Section D-1 coverage for ResinTech.

51. As a direct and proximate result of the foregoing, ResinTech has incurred substantial actual damages and such damages are continuing.

**COUNT I (BREACH OF CONTRACT - AIG)**

52. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53. Defendant AIG has refused, rejected, or failed to honor its obligations to provide coverage for ResinTech's covered losses under the Policies.

54. By reason of the foregoing, AIG has breached its obligations under the Policies, and is liable to ResinTech for money damages for breach of contact.

55. As a result of the aforesaid breaches of contract, ResinTech has suffered damages.

**WHEREFORE,** ResinTech demands judgment against Defendant AIG as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT II (DECLARATORY JUDGMENT - AIG)**

56. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57. AIG has failed and refused to meet its obligations in connection with the losses sustained by ResinTech resulting from the Claims.

58. ResinTech seeks a judicial determination of ResinTech's rights and AIG's obligations with regard to an actual controversy arising out of the Policies.

59. An actual, present and justiciable controversy exists between ResinTech and AIG with respect to AIG's respective duties and obligations to ResinTech under the Policies.

60. The issuance of relief by this Court will resolve the existing controversy between ResinTech and AIG.

**WHEREFORE,** ResinTech demands judgment against Defendant AIG as follows:

(a) Declaring and adjudging that ResinTech is entitled to insurance coverage under the Policies for, among other things, the losses sustained by ResinTech as a result of the Claims.

(b) In addition to such declaratory relief, ResinTech should recover such monetary relief as necessary given the Court's declaration of ResinTech's rights and AIG's obligations.

**COUNT III (BREACH OF CONTRACT - ODELL)**

61. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 60 as if fully set forth herein.

62. Under the Broker Agreement, Odell agreed to provide brokerage services to ResinTech.

63. Odell failed to perform all of its duties consistent with the terms and conditions of the Agreement.

64. By reason of the foregoing, Odell has breached the Broker Agreement with ResinTech by failing, among other things, to secure appropriate insurance coverage for ResinTech, including Section D-1 coverage under the Policies, and to properly advise ResinTech with regard to insurance coverage matters.

65. By reason of the foregoing, Odell has breached is obligations under the Broker Agreement, and is liable to ResinTech for money damages for breach of contract.

66. As a result of the aforesaid breaches of contract, ResinTech has suffered damages.

**WHEREAS,** ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT IV (NEGLIGENCE - ODELL)**

67. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 66 as if fully set forth herein.

68. At all relevant times, Odell owed ResinTech a duty to exercise reasonable skill, care, and diligence when, among other things, (i) advising ResinTech in the purchase of its insurance policies; (2) procuring insurance policies on ResinTech's behalf; and (iii) examining the proposed terms and conditions of the insurance policies it obtained on ResinTech's behalf.

69. Odell breached its duties to ResinTech and failed to exercise reasonable skill, care, and diligence in connection with the brokerage services provided to ResinTech by, among other things, failing to secure Section D-1 coverage under the Policies.

70. By reason of the foregoing, Odell has breached its obligations and is liable to ResinTech for money damages for its negligence.

71. As a result of the foregoing, ResinTech has suffered damages.

**WHEREFORE,** ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT V (BREACH OF FIDUCIARY DUTIES - ODELL)**

72. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 71 as if fully set forth herein.

73. Odell undertook special obligations of a fiduciary nature to ResinTech.

74. Odell breached its fiduciary obligations to ResinTech by failing to secure appropriate insurance coverage for ResinTech (including by failing to secure Section D-1 coverage under the Policies) and to properly advise ResinTech with respect to insurance coverage matters.

75. Odell is liable to ResinTech for this and for the costs ResinTech has incurred and will incur in this litigation.

**WHEREAS,** ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Count may deem just and appropriate.

**COUNT VI (PROFESSIONAL MALPRACTICE - ODELL)**

76. ResinTech repeats and re-alleges each and every allegation contained in paragraph 1 through 75 as if fully set forth herein.

77. Odell owed a duty to act with, at least, the degree of skill, care, and diligence generally expected of reasonably skilled members of the profession.

78. ResinTech reasonably relied upon Odell to act in a manner consistent with its obligations.

79. Odell departed from the standard of care expected of it by, among other things, failing to secure Section D-1 coverage under the Policies.

80. By reason of the foregoing, Odell has breached its obligations, and is liable to ResinTech for money damages.

81. As a result of the foregoing, ResinTech has suffered damages.

**WHEREFORE**, ResinTech demands judgment against Defendant Odell as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**COUNT VII (REFORMATION OF CONTRACT IN THE ALTERNATIVE - AIG)**

82. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 81 as if fully set forth herein.

83. ResinTech sought adequate insurance coverage, including Section D-1 coverage for losses ResinTech incurs in connection with the West Berlin, New Jersey property.

84. Despite the agreement and understanding between ResinTech and AIG that the West Berlin, New Jersey property was to be insured under Section D-1, the Primary Policy AIG issued does not include a Schedule of Insured Property(ies) Endorsement applicable for Section D-1.

85. This error does not reflect the agreement reached by ResinTech and AIG regarding the Primary Policy.

86. At all times, it was the intent of the parties, including AIG, to insure ResinTech for losses incurred in connection with the West Berlin, New Jersey property under the Primary Policy's Section D-1 coverage.

87. As a result of the parties' inadvertent mutual mistake, the Primary Policy, as written, does not reflect the parties' true mutual intent and agreement and ResinTech, therefore, seeks reformation of the Primary Policy to include a Schedule of Insured Property(ies) Endorsement applicable for Section D-1, which lists ResinTech's facility located at 160 Cooper Road in West Berlin, New Jersey.

88. AIG will not be prejudiced by reformation of the Primary Policy as it relates to the Schedule of Insured Property(ies) Endorsement or otherwise.

**WHEREFORE**, ResinTech demands judgment against Defendant AIG as follows:

(a) For reformation of the Primary Policy so that it includes a Schedule of Insured Property(ies) Endorsement, which lists ResinTech's facility located at 160 Cooper Road in West Berlin, New Jersey.

**COUNT VIII (BREACH OF THE REFORMED CONTRACT IN THE ALTERNATIVE-AIG)**

89. ResinTech repeats and re-alleges each and every allegation contained in paragraphs 1 through 88 as if fully set forth herein.

90. The Primary Policy, as reformed to reflect the parties' intent, is a valid and enforceable contract between ResinTech and AIG.

91. The Primary Policy includes a Schedule of Insured Property(ies) Endorsement applicable for Section D-1, which lists ResinTech's facility located at 160 Cooper Road in West Berlin, New Jersey .

92. The Primary Policy insures ResinTech's losses incurred in connection with the Claims under the gradual pollution coverage provided by Section D-1 of the Policy

93. The Excess Policy follows form to the reformed Primary Policy and, as a result, insures ResinTech's losses incurred in connection with the Claims under the gradual pollution coverage provided by Section D-1 of the reformed Primary Policy to the extent those losses exceed the reformed Primary Policy's $1 million limit of liability.

94. Defendant AIG has refused, rejected, or failed to honor its obligations to provide coverage for ResinTech's covered losses under the Policies, as reformed.

95. By reason of the foregoing, AIG has breached its obligations under the Policies, as reformed, and is liable to ResinTech for money damages.

96. As a result of the aforesaid breaches of the reformed contract, ResinTech has suffered damages.

**WHEREFORE**, ResinTech demands judgment against Defendant AIG as follows:

(a) For compensatory damages;

(b) For consequential damages;

(c) For pre-judgment and post judgment interest;

(d) For attorneys' fees and costs of suit; and

(e) For such other relief as the Court may deem just and appropriate.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all counts so triable.

**DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Steven J. Pudell as trial counsel.

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I HEREBY CERTIFY that the matter in controversy is not the subject of any other action pending in any court or any arbitration, and that no such other action is contemplated. I am not aware of any other parties that need to be joined at this time.

Dated: October 16, 2024

By: /s/ *Robert D. Chesler*

Robert D. Chesler, Esq.
Steven J. Pudell, Esq.
**ANDERSON KILL, P.C.**
One Gateway Center, Suite 1510
Newark, NJ 07102
*Attorneys for Plaintiff*
*ResinTech, Inc.*