**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RESINTECH, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> AIG SPECIALTY INSURANCE COMPANY and ODELL STUDNER GROUP, <br><br> *Defendants*. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br><br> No. 21-19843 (KMW) (AMD) <br><br><br> **OPINION** |

APPEARANCES:

Steven J. Pudell, Esq.
**ANDERSON KILL, P.C.**
ONE GATEWAY CENTER
SUITE 901
NEWARK, NJ 07102

    *Attorney for Plaintiff ResinTech, Inc.*


Laurence M. McHeffey, Esq.
Joyce Elizabeth Boyle, Esq.
Kevin MacGillivray, Esq.
**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
7400 EAST ORCHARD ROAD
SUITE 320S
GREENWOOD VILLAGE, CO 80111

    *Attorneys for Defendant AIG Specialty Insurance Company*

**WILLIAMS, District Judge:**

### I. INTRODUCTION

Before the Court is Plaintiff ResinTech, Inc.'s ("Plaintiff") Motion to Dismiss (ECF No. 165, "MTD") Defendant AIG Specialty Insurance Company's ("Defendant") Counterclaim (ECF No. 161). Plaintiff opposes the motion (ECF No. 174, "Opp. Br."). Defendant replied (ECF 176). The Court, having reviewed the Parties' submissions and considered the MTD without oral argument pursuant to Federal Rule of Civil Procedure 78(b), **DENIES** Plaintiff's motion.

### II. FACTUAL BACKGROUND[1]

#### A. The Parties

Plaintiff is a New Jersey corporation that describes itself as "a global leader in the field of ion exchange for water and fluid purification."[2] (*See* Fourth Am. Compl. ("FAC") ¶ 7, ECF No. 155). Defendant is an Illinois corporation with its principal place of business in New York. (*Id.* ¶ 8.) It describes itself as "a leader in commercial and personal insurance solutions" with "one of the world's most far-reaching property casualty networks."[3]

#### B. Factual history

The facts of this case have been detailed at length in the Court's previous Opinions. (ECF Nos. 122, 149.) Accordingly, this Opinion will focus on the details pertinent to the pending motion. This case arises out of Plaintiff's request for insurance coverage from its insurer, Defendant, for

---

[1] Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do for a complaint. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). Under the appropriate legal standard, the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The facts are taken from Defendant's Counterclaim and public records of which this Court takes judicial notice. *See* Fed. R. Evid. 201.

[2] ResinTech, Inc. *About*, https://www.resintech.com/about/ (last visited June 25, 2025).

[3] AIG, *About*, https://www.aig.com/home/about (last visited June 25, 2025).

losses incurred in connection with notices of violations issued by the Camden County Municipal Utilities Authority ("CCMUA") and the New Jersey Department of Environmental Protection for damages allegedly caused by discharges from its facility in Berlin, New Jersey. (Rev. FAC ¶ 1.)

Plaintiff purchased a Commercial General Liability and Pollution Legal Liability Policy and a Commercial Excess Policy from Defendant for the period of January 1, 2020 to January 1, 2021. (Def.'s Counterclaim ¶¶ 1-2.) Arthur J. Gallagher, acting as broker of record for Plaintiff, requested renewal quotes for the policies and submitted an application to Defendant as a part of that process on November 12, 2020. (Def.'s Counterclaim ¶ 3.) Negotiations over the renewal broke down and Gallagher requested an extension of the existing policies to give Plaintiff time to find coverage from another carrier. (Def.'s Counterclaim ¶¶ 5-6.) On or about December 23, 2020, Defendant agreed to a three-month extension of the expiring policies, providing coverage until April 1, 2021. (Rev. FAC ¶ 21; Def.'s Counterclaim ¶ 7.)

Unbeknownst to Defendant, CCMUA had issued a notice of violation letter to Plaintiff on October 28, 2020, alleging it discharged non-compliant wastewater into the sewer system. (Rev. FAC ¶ 31; Def.'s Counterclaim ¶¶ 9-10.) Plaintiff did not include the CCMUA's notice of violation in its November 2020 application, which Defendant alleges it relied upon in granting the policy extension. (Def.'s Counterclaim ¶¶ 8-10.) On March 26, 2021, Plaintiff submitted a notice of claim to Defendant as to the violation notice from CCMUA and a violation letter from the New Jersey Department of Environmental Protection, dated February 4, 2021. (Def.'s Counterclaim ¶¶ 9-10) Defendant denied coverage, which Plaintiff alleges was a breach of contract. (Rev. FAC ¶ 54.)

Because Defendant had not previously been informed of the CCMUA violation notice, it contends Plaintiff's application for policy renewals contained material misrepresentations and omissions of facts regarding the claim asserted against it and would not have provided the

3

extension if it had been made aware of the claim. (Def.'s Counterclaim ¶¶ 3, 9.) Further, Plaintiff provided the notice of claim only under its primary policy and not the excess policy. (Def.'s Counterclaim ¶ 10.) Had the policy extension not been issued, the excess policy would have expired on January 1, 2021, and therefore the notice of claim submitted on March 26, 2021, would not have provided Defendant the required notice. (Def.'s Counterclaim ¶ 11.)

### C. Procedural history

Plaintiff previously amended the complaint two times to address jurisdictional issues. Plaintiff filed a third iteration of the complaint, with Defendants' consent, to include reformation causes of action. (*See* Third Am. Compl., ECF No. 58.) Plaintiff then filed the FAC, which Plaintiff further revised, adding the excess policy which was triggered because it reached a settlement in principle with CCMUA for an amount above the limits of the primary policy. (*See* Rev. FAC.)

The previous versions of Plaintiff's complaints did not allege an extension to its policies. (*Compare* Rev. FAC ¶ 21 *with* Third Am. Compl. *and* ECF Nos. 1, 17, 26; *see also* Motion for Leave to Amend, Ex. B, ECF No. 134-5 at 23.) It was not until the Revised FAC was filed on October 28, 2024, that the extension was included. (Rev. FAC ¶ 21.) Defendant contends the addition of those allegations is in violation of the Court's previous Order but filed an answer to move the case forward. (Opp. Br. at 15.) Defendant further argues that it was not until the June 12, 2024, deposition of Plaintiff's Human Resources Director, Maureen Martin, that it was apparent that Plaintiff's application for a policy renewal contained a misrepresentation that it was not aware of any claims against it. (*Id.* at 16.) Defendant asserts that until it had that information in June 2024 and Plaintiff alleged the policy extensions in its Revised FAC in October 2024, it was not in a position to seek rescission of the extensions. (*Id.* at 17.)

## III.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the movant, *see Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do for a complaint. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011).

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester Cnty.*

*Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Littig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, one exception is that courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## IV. DISCUSSION

Plaintiff seeks to dismiss Defendant's Counterclaim on the grounds that a claim of rescission must be promptly made and that it failed to do so by waiting three and a half years to make its claim. (MTD Br. at 1.) Plaintiff argues that from March 26, 2021, when it first submitted its notice of claim, Defendant had access to the information on which it now rests its Counterclaim of rescission. (*Id.* at 8.) Therefore, it argues that Defendant did not act promptly in asserting rescission. (*Id.*) Defendant, meanwhile, argues it was not until after it deposed Maureen Martin in June 2024 and Plaintiff filed its Revised FAC in October 2024 that it had all the facts necessary to support a rescission claim and that it therefore did act promptly. (Opp. Br. at 1-2.)

Rescission is the abrogation of a contract *ab inito*, "meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose." *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 137 (2003) (quoting *Black's Law Dictionary* 1568 (7th ed. 1999)). The law is well settled in New Jersey that equitable fraud provides a basis for a party to rescind a contract. *Id.* at 136. To rescind an insurance contract on the grounds of equitable fraud, the party must demonstrate

6

proof of: "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *Harford Mutual Ins. Co. v. Z & D Realty, LLC*, 648 F.Supp.3d 499, 510 (D.N.J. 2022) (quoting *Liebling v. Garden State Indem.*, 337 N.J. Super. 447, 453 (App. Div.), *certif. denied*, 169 N.J. 606 (2001)) (internal quotation marks omitted).

To rescind an insurance policy, however, the insurer need not show the insured actually intended to deceive and even an innocent misrepresentation can constitute an equitable fraud justifying rescission. *Id.* In an insurance contract,

> a representation by the insured, whether contained in the policy itself or in the application for insurance, will support the forfeiture of the insured's rights under the policy if it is untruthful, material to the particular risk assumed by the insurer, and actually and reasonably relied upon by the insurer in the issuance of the policy.

*First American Title Ins. Co.*, 177 N.J. at 137 (quoting *Allstate Ins. Co. v. Meloni*, 98 N.J. Super. 154, 158-59 (App. Div. 1967)). The insurer may rescind an insurance policy when false statements materially affect either the acceptance of the risk or the hazard assumed by the insurer. *Harford Mutual Ins. Co.*, 648 F.Supp. at 510. A misrepresentation is material if it "naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." *Id.* at 510-11 (quoting *Massachusetts Mut. Life Ins. Co. v. Manzo*, 122 N.J. 104, 115 (1991)).

Even if the grounds for rescission exist, it is a discretionary remedy and will not be granted if the claim is not made within a reasonable time or where there has been substantial performance. *Farris v. County of Camden*, 61 F.Supp.2d 307, 336 (D.N.J. 1999). Subsequent conduct by the offended party can be deemed to have ratified the transaction. *Rieder v. Scher*, 674 F.Supp. 485, 487 (D.N.J. 1987) (quoting *Ajamian v. Schlanger*, 20 N.J. Super. 246, 249 (App. Div. 1952). "What

7

is or is not a reasonably prompt exercise of the right of rescission, must depend upon the circumstances of each case." *Gunderson v. Brey*, 210 F. 401, 407 (3d Cir. 1914).

In *Harford Mutual Ins. Co.*, the defendant submitted insurance applications for some of its properties, wherein it denied that it had any additional operations and that there would be social events held on their premises. *Harford Mutual Ins. Co.*, 648 F.Supp. at 505. But when a shooting happened at an event hosted at the defendant's banquet hall, the existence of which had not been disclosed on the application, it requested defense and indemnity from its insurers. *Id.* at 506. Harford and Firstline National Insurance, the insurers, filed complaints in January 2019 seeking rescission of the contract, nearly two years after the April 2017 shooting. *Id.* at 506-07. That case was resolved on summary judgment, with rescission granted for both insurers despite the delay of nearly two years. *Id.* at 519.

Here, Defendant alleges that Plaintiff made a material misrepresentation in its November 2020 policy application when it omitted the fact that CCMUA issued a notice of violation letter to Plaintiff on October 28, 2020. (Def.'s Counterclaim ¶¶ 3, 10.) Defendant further alleges that it relied on Plaintiff's misrepresentations in connection with its request to extend the policies, which it would have denied if Plaintiff had not made those misrepresentations. (*Id.* ¶¶ 8-9.) The Court finds that these allegations adequately plead the *prima facie* elements for a claim of recission. *See First American Title Ins. Co.*, 177 N.J. at 136-07; *Harford Mutual Ins. Co.*, 648 F.Supp. at 510.

Moreover, Plaintiff's argument that Defendant failed to timely assert its Counterclaim is without merit, as Plaintiff did not seek relief pursuant to the policy extensions until it filed its Revised FAC in October 2024. (*See* Rev. FAC ¶¶ 21-22.) Because Defendant's Counterclaim seeks only to rescind those extensions, the Court finds that Defendant's November 12, 2024, Counterclaim was timely asserted. *See Harford Mutual Ins. Co.*, 648 F.Supp. at 519.

8

Furthermore, New Jersey courts frequently evaluate promptness in tandem with substantial performance. *See Hilton Hotels Corp. v. Piper Co.*, 214 N.J. Super. 328, 336 (N.J. Ch. Div. 1986) ("Even where grounds for rescission exist, however, the remedy is discretionary and will not be granted where the offended party has not acted within a reasonable time or where there has been substantial performance.") (internal citations omitted); *Rieder*, 674 F.Supp. at 487 (citing *Ajamian*, 20 N.J. Super. at 249). Here, Plaintiff brought its claim five days (three business days) before the end of the extended policy period. In such a case, it cannot be said that the insurer affirmed the contract through performance and therefore waived the right to rescission.

Because the Court has discretion when applying equitable remedies based on the facts of each case, and Defendant's Counterclaim adequately alleges a *prima facie* case for rescission of the policy extensions, the Court finds that it is premature at this stage of litigation to dismiss the rescission claim. Therefore, Defendant's Counterclaim is not deficient for having failed to state a claim upon which relief can be granted.

### V.    CONCLUSION

For all the foregoing reasons, Plaintiff's Motion to Dismiss (ECF No. 165) is **DENIED**. An order consistent with this Opinion will be entered.

Dated: June 26, 2025

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

9